IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. BURNSWORTH, JR, and DIANA BURNSWORTH, his wife, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.: 05-811 |
| PC LABORATORY, PENNSYLVANIA STATE POLICE; DANIEL EKIS, Individually and as a Pennsylvania State Police Trooper; and GREENE COUNTY MEMORIAL HOSPITAL, | ) ) ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

CONTI, District Judge.

I.      **Introduction**

Plaintiffs Donald J. Burnsworth, Jr. ("plaintiff-husband") and Diana Burnsworth

("plaintiff-wife," together with plaintiff-husband "plaintiffs") filed this civil action alleging

federal claims under 42 U.S.C. § 1983 ("Section 1983") and separate tort claims governed by

state law.  The action was initially commenced by plaintiffs in the Court of Common Pleas of

Washington County, Pennsylvania, and defendants removed the case to this court pursuant to 28

U.S.C. § 1441.  Jurisdiction over the plaintiffs' federal claims arises under 28 U.S.C. §§ 1331

and 1343, and supplemental jurisdiction over the plaintiffs' state law claims arises under 28

U.S.C. § 1367.

In this memorandum opinion, the court considers the summary judgment motions filed by defendants Greene County Memorial Hospital ("GCMH") (Docket No. 44), Pittsburgh Criminalistics Laboratory ("Pc Lab," together with GCMH "medical defendants") (Docket No. 52), the Pennsylvania State Police ("Pennsylvania State Police") (Docket No. 47), and State Trooper Daniel Ekis ("Ekis") (Docket No. 47) (GCMH, Pc Lab, Pennsylvania State Police, and Ekis collectively "defendants"). Defendants are seeking that summary judgment be granted in their favor pursuant to Federal Rule of Civil of Procedure 56. Plaintiffs also filed a motion for summary judgment. (Docket No. 69.) The court will consider the cross-motion for summary judgment in this memorandum opinion.

After considering the parties' statements of material facts and the other submissions of the parties, and drawing all reasonable inferences in favor of plaintiffs, the court, for the reasons set forth in this opinion, will grant summary judgment in favor of the Pennsylvania State Police and Ekis with respect to plaintiffs' federal claims against them and will decline to exercise supplemental jurisdiction over the state law claims, which will be remanded to the state court.

II.    **Factual Background**

Plaintiff-husband had a contract with Commercial Aggregates Transportation and Sales ("CATS") to haul and transport freight. (Joint Concise Statement of Material Facts Regarding Defendants' Motions for Summary Judgment, "J.S.D.1" ¶ 1.)[1] CATS was a division of Hanson

---

[1] As required by Local Rule 56.1, GCMH and Pc Lab, as the movants, submitted their respective joint concise statement of material facts (Docket Nos. 72 and 73) regarding their motions for summary judgment (Docket Nos. 44 and 52). The court will refer to the joint concise statements of material facts respectively as "J.S.D.1" and "J.S.D.2."

Ekis also submitted a joint concise statement (Docket No. 82); however, the court notes that he failed to comply with Local Rule 56.1 by not setting forth the facts in numbered

& Hanson Stone Company ("Hanson & Hanson"), which handled the trucking portion of the business. (Docket No. 46, Def.'s Ex. BB; J.S.D.1 ¶ 24.) Plaintiff-husband, as an independent contractor, was compensated for each ton hauled. (Docket No. 46, Def.'s Ex. A at 3, Def.'s Ex. D; J.S.D.1 ¶ 2.) He did not receive health insurance benefits and had to purchase his own. (Docket No. 46, Def.'s Ex. A at 3, Def.'s Ex. D; J.S.D.1 ¶ 2.)

On February 18, 2003, plaintiff-husband transported road de-icing material along State Route 711, while traveling from Connellsville, Pennsylvania to Nettle Hill, Pennsylvania. (Docket No. 46, Def.'s Ex. E; J.S.D.1 ¶ 3.) Around 11:00 a.m., plaintiff-husband's vehicle collided with another vehicle, and the collision resulted in a fatality. (Docket No. 46, Def.'s Ex. E, Def's Ex. F; J.S.D.1 ¶ 3; J.S.D.2 ¶ 8; J.S.P. ¶ 9.) After the accident, plaintiff-husband spoke with his immediate supervisor at CATS, Melissa May ("May"), to inform her that he had been in a fatal accident. (Docket No. 46, Def.'s Ex. G; J.S.D.1 ¶ 4.) May told plaintiff-husband that he would need to undergo a drug and alcohol test and he had two choices: he could either go to the CATS facility to have the screening performed there or he could go with the state police to have the screening performed at their facility. (Docket No. 46, Def.'s Ex. G; J.S.D.1 ¶ 4; J.S.D.2 ¶¶ 9, 11.) Plaintiff-husband had been tested before at the CATS facility. (J.S.D.2 ¶ 12.) At the time of the accident, however, plaintiff-husband exhibited no desire to have the testing conducted at

---

paragraphs. Ekis merely stated that the only fact on which plaintiffs sought a clarification was in paragraph 3 (Ekis' concise statement of facts, Docket No. 49, has only four numbered paragraphs of facts). Ekis included arguments that should have been incorporated into his brief (Docket No. 48) supporting his motion for summary judgment (Docket No. 47). The court assimilated into the factual background section facts relating to Ekis from Ekis' concise statement of facts (Docket No. 49) and plaintiffs' response to those facts (Docket No. 60).

Plaintiffs, as the movants for their cross-motion for summary judgment (Docket No. 69), submitted a joint concise statement of material facts (Docket No. 88) regarding their cross-motion, which the court will refer to as "J.S.P."

the CATS facility or to have it performed at a particular lab.  (Docket No. 46, Def.'s Ex. N;

J.S.D.1 ¶ 10; J.S.D.2 ¶ 15.)  Plaintiff-husband was aware that he would have to undergo the test

(Docket No. 40; J.S.D. ¶ 4), and based on previous testing, knew that the test would include

testing for the presence of marijuana, cocaine, and some amphetamines.  (Docket No. 46, Def.'s

Ex. G; Docket No. 50, Ex. A at 29, 43; J.S.D.1 ¶ 4; J.S.D.2 ¶ 13.)

Ekis had been employed as a Pennsylvania state trooper since September 1995, and

Pennsylvania State Police assigned him to Troop B of the Waynesburg patrol unit.  (Docket No.

50, Ex. B at 6, 9; J.S.D.2 ¶¶ 18, 19.)  On February 18, 2003, Ekis arrived at the scene of the

accident, interviewed a witness to the accident, and provided traffic control until the road was

cleared.  (Docket No. 46, Def.'s Ex. H; J.S.D.1 ¶ 5.)  After completing these tasks, Ekis

contacted one of his superiors, Corporal Barto, because he did not have any knowledge about the

commercial motor vehicle law and did not know what to do next.  Corporal Barto told him that

plaintiff-husband would have to be tested according to the commercial motor vehicle law.

(Docket No. 46, Def.'s Ex. H, Def.'s Ex. I; Docket No. 50, Def.'s Ex. B at 14-15; J.S.D.1 ¶ 6;

J.S.D.2 ¶¶ 21, 22; J.S.P. ¶¶ 28, 34.)  Ekis transported plaintiff-husband to GCMH for testing.

(Docket No. 46, Def.'s Ex. I; J.S.D.1 ¶ 6.)

Upon arriving at GCMH, Ekis and plaintiff-husband met with Catherine Shimek

("Shimek"), a phlebotomist.  Shimek had been employed as a medical secretary and

phlebotomist for thirty-seven years.  (Docket No. 50, Def.'s Ex. C at 5-6; J.S.D.2 ¶ 28.)

Although Shimek stated that the general protocol upon the arrival of the police is to establish a

chain of custody (Docket No. 50, Def.'s Ex. C at 10, 48-49; J.S.D.2 ¶ 29), she was unaware of

the proper procedure to follow, and asked Ekis which test was to be administered. (Docket No.

46, Def.'s Ex. J, Def.'s Ex. K; J.S.D.1 ¶ 7.) Ekis responded that he was not sure, but instructed Shimek to perform a blood and urine test. (Docket No. 46, Def.'s Ex. J, Def.'s Ex. K; J.S.D.1 ¶ 7.) Plaintiff-husband was more familiar with the governing regulations surrounding his drug and alcohol screening than GCMH, Ekis, or the hospital personnel (Docket No. 46, Def.'s Ex. M; Docket No. 50, Ex. A at 37; J.S.D.1 ¶ 9; J.S.D.2 ¶¶ 10, 16), and plaintiff-husband told Ekis that a drug test was standard procedure for an individual with a commercial driver's license ("CDL"). (Docket No. 50, Def.'s Ex. A at 38; J.S.D.2 ¶ 17.) Although Ekis was unfamiliar with the rules and somewhat uncertain about what to do, he did understand that this was an employment-related drug screening, not directly related to a criminal investigation. (J.S.P. ¶ 30.) After GCMH collected the samples from plaintiff-husband, it sent him a bill on or about February 20, 2003, listing the service rendered as "self pay" and charged a "handling fee" of $16.00. (Docket No. 58, Pl.'s Br. at 9.)

When Shimek was completing the Federal Drug Testing and Custody Control Form ("Control Form"), she took a form used by other companies and crossed out certain pre-printed information at the top of the Control Form. (Docket No. 50, Def.'s Ex. C at 42; J.S.D.2 ¶¶ 30-31.) The hospital personnel scratched out the reference to GCMH, under the section marked "Employer Names" on the federal testing form. (J.S.P. ¶ 6.) Shimek also crossed out the name of the medical review officer ("MRO") on the top of the form. (Docket No. 46, Def.'s Ex. Q at 42.) Shimek marked "post-accident" on the Control Form because she understood this to be the nature of the test being conducted. (Docket No. 50, Def.'s Ex. C at 45; J.S.D.2 ¶ 32; J.S.P. ¶ 3.) Shimek also marked a box that indicated that the National Institute of Drug Abuse ("NIDA") testing was to be done. (Docket No. 50, Def.'s Ex. C at 49-51; J.S.D.2 ¶ 33.) She did so out of

habit.  (Docket No. 50, Def.'s Ex. C at 51; J.S.D.2 ¶ 34.)

After the blood was collected from plaintiff-husband it was placed into two grey top tubes, and after the urine was collected it was placed into two vials.  The specimens were given to Ekis.  (Docket No. 46, Def.'s Ex. O; J.S.D.1 ¶ 11.)  Plaintiff-husband spoke with May either on February 18 or February 19, 2003 and told her that he felt that there were "some discrepancies" with the drug test.  (Docket No. 46, Def.'s Ex. Z at 85; J.S.D.1 ¶ 22.)  May informed plaintiff-husband that he could have another drug test performed at the CATS facility, but he declined.  (Docket No. 46, Def.'s Ex. Z at 85-86; J.S.D.1 ¶ 22.)

The Control Form indicated that the specimen bottles were released to Ekis.  (J.S.P. ¶¶ 8, 32.)  As Ekis and the hospital personnel did not know what Ekis was to do with the samples once in his possession, Ekis contacted his barracks and was instructed to bring the samples back to the barracks and place them into evidence.  (Docket No. 46, Def.'s Ex. K, Def.'s Ex. P; Docket No. 50, Def.'s Ex. B at 32; J.S.D.1 ¶ 12; J.S.D.2 ¶ 25.)  The evidence was entered under property record B5-6883.  (Docket No. 50, Def.'s Ex. B at 32; J.S.D.2 ¶ 25.)  Ekis was uncertain about whether the Control Form was to establish a chain of custody for the blood and urine samples that were released to him.  (Docket No. 50, Def.'s Ex. B at 44; J.S.D.2 ¶ 27.)

On February 19, 2003, Trooper Dittrich of Pennsylvania State Police delivered the specimens to Pc Lab along with the Control Form and a letter from Pennsylvania State Police, requesting testing.  (Docket No. 46, Def.'s Ex. R, Def.'s Ex. S; Docket No. 50, Def.'s Ex. D at 13, 15; J.S.D.1 ¶ 14; J.S.D.2 ¶¶ 41, 42.)  Pennsylvania State Police requested the testing of the blood for alcohol and the urine for drugs.  (J.S.D.2 ¶ 43.)  If Pc Lab had received the Control Form without the Pennsylvania State Police request letter, Pc Lab would have called

Pennsylvania State Police to determine which tests to perform on the specimens. (Docket No. 46, Def.'s Ex. T; J.S.D.1 ¶ 16.)

Pc Lab is a state- and federally-licensed facility that conducts blood and urine screening. (Docket No. 50, Def.'s Ex. D at 9; J.S.D.2 ¶ 39.) Pc Lab does not conduct post-accident testing on commercial driver-employees for their employers, as Pc Lab is not a NIDA laboratory. (Docket No. 46, Def.'s Ex. U; J.S.D.1 ¶ 17.) Most of the urine screening performed by Pc Lab is done for hospitals, which do not require testing for cannabinoids.[2] (Docket No. 50, Def.'s Ex. D at 48; J.S.D.2 ¶ 48.) Pc Lab occasionally received blood or urine from the Pennsylvania State Police for the testing of commercial drivers. (J.S.D.1 ¶ 19.)

Pc Lab performed testing for cannabinoids in all police cases. (Docket No. 50, Def.'s Ex. D at 22; J.S.D.2 ¶ 47.) After testing for cannabinoids, Pc Lab either typed or handwrote the results onto a report form. (Docket No. 50, Def.'s Ex. D at 23; J.S.D.2 ¶ 49.) When two vials of blood are submitted, Pc Lab saved one, provided there was a request made. (Docket No. 50, Def.'s Ex. D at 77; J.S.D.2 ¶ 60.)

Charles Winek, Jr., ("Winek Jr.") had been an employee of Pc Lab since 1979, and was its laboratory manager since 1990. (Docket No. 50, Def.'s Ex. D at 5-7; J.S.D.2 ¶¶ 36, 37.) Winek Jr. was not familiar with post-accident testing as required by transportation officials. (Docket No. 50, Def.'s Ex. D at 8; J.S.D.2 ¶ 38.) He, however, received a federal custody form requesting a split sample about ten percent of the time. (Docket No. 50, Def.'s Ex D at 77; J.S.P. ¶ 38.) Winek Jr. believed he may have performed the actual testing on plaintiff-husband's sample, but he could not say so with certainty. (Docket No. 50, Def.'s Ex. D at 20; J.S.D.2 ¶

---

[2]Cannabinoids are "hallucinogenic compounds endogenous to marihuana, in serum, plasma, saliva, and urine." 49 C.F.R. § 362.3870.

44.) Winek Jr. also believed that the Control Form was used merely to establish chain of custody prior to Pc Lab receiving the samples. (Docket No. 50, Def.'s Ex. D at 53, 97; J.S.D.2 ¶ 56.) The staff of Pc Lab was not trained on handling split samples. (Docket No. 50, Def.'s Ex D at 76-77; J.S.P. ¶ 38.) Winek Jr. attested that Pc Lab received the Control Form, but he did not give it particular attention. (Docket No. 50, Def.'s Ex. D at 53; J.S.D.2 ¶ 55.) Winek Jr. never saved urine; the urine was discarded as medical waste after completion of the test. (Docket No. 50, Def.'s Ex. D at 64-65, 67; J.S.D.2 ¶¶ 58, 59.) When Pc Lab received two vials of blood or urine, it did not consider them to be a split sample. (Docket No. 50, Def.'s Ex. D at 77; J.S.D.2 ¶ 61.) In order for two vials to be treated as a split sample, Pc Lab required a submission from the police to that effect. (Docket No. 50, Def.'s Ex. D at 81-82; J.S.D.2 ¶ 63.) Winek Jr. stated that if NIDA testing was specifically requested at Pc Lab, he would advise the requesting party to go elsewhere. (Docket No. 50, Def.'s Ex. D at 94; J.S.D.2 ¶ 65.)

Dr. Charles L. Winek, Sr., Ph.D., ("Winek Sr.") established Pc Lab over thirty years ago and is the director. (Docket No. 50, Def.'s Ex. E at 8-9; J.S.D.2 ¶ 69.) Winek Sr. was familiar with the testing associated with having a commercial driver's license, although he was not familiar with the Control Form and had never seen one prior to this case. (Docket No. 50, Def.'s Ex. E at 10-11, 19-20; J.S.D.2 ¶ 73; J.S.P ¶ 39.) He stated there is no special procedure involved with commercial driver's license testing regarding the analytical methods utilized. (Docket No. 50, Def.'s Ex. E at 20; J.S.D.2 ¶ 74.) Winek Sr. testified that Pc Lab did not conduct testing for employers; the protocol was to advise the employer-requester that Pc Lab is not a NIDA laboratory and the employers should go to a NIDA-certified laboratory. (Docket No. 50, Def.'s Ex. E at 22; J.S.D.2 ¶ 75.) Winek Sr. stated that the concept of 'split samples' is

specific only to NIDA protocol. (Docket No. 50, Def.'s Ex. E at 26; J.S.D.2 ¶ 76.) Winek Sr. also testified that the request letter submitted by Pennsylvania State Police was controlling as far as the testing to be performed by Pc Lab. (Docket No. 50, Def.'s Ex. E at 33; J.S.D.2 ¶ 77.)

Plaintiff-husband's urine tested positive for marijuana. (Docket No. 46, Def.'s Ex. X; J.S.D.1 ¶ 20.) The testing conducted by Pc Lab on plaintiff-husband's urine utilized a minimum confirmation level for a positive marijuana result higher than the minimum confirmation level for a positive marijuana result under the Department of Transportation ("DOT") or NIDA regulations. (Docket No. 46, Def.'s Ex. Y; J.S.D.1 ¶ 21.) The confirmatory report, however, could not be produced and was not part of the records retained in the specific file bearing on the test. (J.S.P. ¶ 36.)

Plaintiff-husband had to seek and verify the results of the drug and alcohol tests. (J.S.P. ¶ 22.) After multiple contacts with Pennsylvania State Police and Pc Lab, plaintiff-husband went to the Pennsylvania State Police barracks on or about April 29, 2003. (Docket No. 46, Def.'s Ex. AA.) There, for the first time, plaintiff-husband learned the results of his urine test. (J.S.D.1 ¶ 23; J.S.P. ¶ 22.) Plaintiff-husband was informed that the result was positive for marijuana and the status of his commercial driver's license was unknown. (J.S.P. ¶ 22.) The positive test result was not an indication that plaintiff-husband was under the influence of marijuana at the time of testing. (Docket No. 50, Def.'s Ex. E at 39; J.S.D.2 ¶ 78.) He was told that no charges would be filed against him since it had been determined that he was not the cause of the accident. (Docket No. 50, Def.'s Ex. E at 39; J.S.D.2 ¶ 78.) Plaintiff-husband was informed by Pc Lab that the blood and urine specimens had been discarded on March 24, 2003. (J.S.P. ¶ 23.)

In September 2003, Hanson & Hanson cancelled plaintiff-husband's contract with CATS. (Docket No. 46, Def.'s Ex. BB; Docket No. 50, Def.'s Ex. A at 80; J.S.D.1 ¶ 24.) Plaintiff-husband maintained his CDL, and no adverse action affecting his license was taken against him as a result of the positive marijuana test. (Docket No. 46, Def.'s Ex. AA; J.S.D.1 ¶ 25.) Despite retaining his license, plaintiff-husband did not apply for or try to work as a truck driver after Hanson & Hanson terminated his contract. (Docket No. 46, Def.'s Ex. CC; J.S.D.1 ¶ 26.) Plaintiff-husband is currently employed as a laborer for the U.S. Steel Clairton Works in Clairton, Pennsylvania. (Docket No. 46, Def.'s Ex. DD; J.S.D.1 ¶ 27.) Starting July 10, 2006, plaintiff-husband earned $16.00 per hour from U.S. Steel Clairton Works and obtained benefits in the form of full dental and medical coverage for his family and himself, as well as disability coverage and a retirement pension. (Docket No. 46, Def.'s Ex. EE; J.S.D.1 ¶ 28.) Plaintiff-husband earned more with his current job than he did when he drove for CATS. (Docket No. 46, Def.'s Ex. FF; J.S.D.1 ¶ 29.)

Plaintiff-husband experienced feelings of fear after the positive drug test, because he was concerned that the test results might be disseminated and would reflect poorly on his family and himself. (Docket No. 50, Def.'s Ex. A at 90.) Although fearful, plaintiff-husband did not take any prescription medications subsequent to the accident and the drug screening. (Docket No. 50, Def.'s Ex. A at 90.) Plaintiff-husband started to take high blood pressure medication six months prior to his deposition on July 10, 2006. (Docket No. 50, Def.'s Ex. A at 96.)

The $16.00 bill sent by GCMH to plaintiff-husband was later attributed to a clerical error, and the fee was waived on January 16, 2006. The bill was charged to Pennsylvania State Police. (Docket No. 67, Def.'s Ex. A at 5.)

Plaintiffs withdrew their claim for any loss of earnings or loss of earning capacity allegedly suffered by plaintiff-husband.  (Docket No. 46, Def.'s Ex. GG; J.S.D.1 ¶ 30.)

## III.  Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.  Id. at 249.  The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (citing 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2721, at 40 (2d ed. 1983)); Pollack v. City of Newark, 147 F. Supp. 35, 39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d Cir. 1957), ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence") (emphasis added).

## IV. Discussion

### A. Overview of the Parties' Arguments

In the First Amended Complaint (Docket No. 25), plaintiffs allege that: (1) Pennsylvania State Police and Ekis violated plaintiff-husband's due process rights and are liable under Section 1983, by not following federal regulations with respect to drug screening and failing to provide proper training in the administration of post-accident drug testing, (2) under state law, GCMH and Pc Lab were negligent in their administration of drug and alcohol screening that took place after plaintiff-husband was involved in an accident while working as an independent contractor, (3) under state law, the negligent conduct of GCMH and Pc Lab resulted in the negligent infliction of emotional distress to plaintiffs, and (4) under state law, plaintiff-wife, due to the deprivation of the care, comfort, protection, services and consortium of plaintiff-husband, suffered damages.

Defendants argue they are entitled to summary judgment on the following grounds: (1) Pennsylvania State Police is not an entity subject to suit under Section 1983; (2) there is no evidence supporting plaintiffs' allegations of civil rights violations against Ekis; (3) GCMH and Pc Lab are immune from civil liability pursuant to 75 PA. CONS. STAT. § 1547; (4) GCMH and Pc Lab did not owe plaintiff-husband a duty of care with regard to the drug screening; (5) plaintiffs failed to state a proper claim for negligent infliction of emotional distress against GCMH and Pc Lab; (6) plaintiffs did not establish any damages; and (7) plaintiff-wife did not have standing to assert a loss of consortium claim based upon plaintiff-husband's constitutional rights.

**B.**     **Section 1983 Claims**

      **1.**     **Pennsylvania State Police and Ekis, in His Official Capacity**

Under the Fourteenth Amendment, the state shall not "deprive any person of life, liberty or property without the due process of law." U.S. CONST. amend. XIV; see James v. Quinlan, 866 F.2d 627, 630 (3d Cir. 1989).  Section 1983 provides that:

> Every person who, under color of [state law] subjects, or causes to be subjected, any . . . person within the jurisdiction [of the United States] to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.  In other words, Section 1983 does not create substantive rights, but provides a vehicle by which violation of rights created by the Constitution or federal law may be vindicated.  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 907 (3d Cir. 1997).  Plaintiffs named Pennsylvania State Police and Ekis, individually and in his official capacity as a Pennsylvania state police trooper, as defendants in the instant matter for depriving plaintiff-husband of his Fourteenth Amendment due process rights while acting under color of state law.

Pennsylvania State Police argues that it is an agency of the Commonwealth of Pennsylvania and accordingly is not a "person" that can be subject to civil rights liability under Section 1983.  Plaintiffs did not respond to the claim that Pennsylvania State Police is not a person for purposes of Section 1983.

It is well established that, in any forum, "neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983."  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); see Hilton v. South Carolina Pub. Rys. Comm'n, 502 U.S. 197, 201 (1991) ("a State is not a 'person' as that term is used in [Section] 1983, and is not suable under

the statute, regardless of the forum where the suit is maintained"). State police departments and state troopers are considered state agencies and state officials under Section 1983. See Dorsett v. New Jersey State Police, No. 04-CV-5652, 2007 WL 556890, at *2 (D.N.J Feb. 15, 2007). The immunity available to the state and its officials, as "non-persons" in a Section 1983 suit, remains after the case has been removed to federal court. See Boone v. Pennsylvania Office of Vocational Rehab., 373 F. Supp. 2d 484, 498-500 (M.D. Pa. 2005).[3]

The court finds that Pennsylvania State Police is not suable under Section 1983 because it is not a person within the meaning of Section 1983, and count II of plaintiffs' complaint alleging civil rights violations against Pennsylvania State Police must be dismissed. The court finds that although Ekis did not directly address this issue, he also is not suable in his official capacity as a Pennsylvania state trooper because in that capacity he, likewise, is not a person for purposes of

---

[3]The plaintiff in Boone was a former employee of a state agency, and she filed suit under 42 U.S.C. § 1983 against her former employer alleging she was wrongfully discharged. Boone, 373 F. Supp. 2d at 488-89. The defendants (which included the Pennsylvania Bureau of Blindness and Visual Services, a sub-unit of the Pennsylvania Department of Labor and Industry) voluntarily removed the case to federal court. Id. at 489. The plaintiff argued that the defendants had waived their right to assert Eleventh Amendment immunity when they removed the matter to federal court. Id. at 490. The court noted that although the Eleventh Amendment "prohibits federal courts from entertaining suits by private parties against States and their agencies," there are exceptions including when a state waives its immunity. Id. at 491. In Boone, the court pointed out that the lead decision, Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613 (2002), did not "decide whether a state's act of removal would constitute a waiver of its Eleventh Amendment immunity for federal claims [or] . . . the scope of waiver by removal in a situation where the State's underlying sovereign immunity from suit has not been waived or abrogated in state court"; rather it decided "a state waives its Eleventh Amendment immunity when it voluntarily removes to federal court state-law claims in which it had expressly waived immunity." Boone 373 F. Supp. 2d at 492 (emphasis added). In Boone, the court noted that the issues not dealt with by the Supreme Court had yet to be definitely resolved among the various courts of appeals. Id. In Boone, the court determined that the Court of Appeals for the Fourth Circuit's reasoning provided an "accurate" and "sensible formulation" for addressing the issue. The court ruled that "the federal court should be permitted 'to hear any claim against the defendant that might have been heard in the state court from which the case was removed. [Removal] should not . . . waive the defendant's immunity from any claims from which it would have been immune in state court.'" Id. at 494.

Section 1983.  Count II of plaintiffs' complaint alleging Ekis' violation of plaintiff-husband's civil rights will be dismissed, to the extent those claims are based upon Ekis' actions in his official capacity.  Ekis in his individual capacity would be considered a person for purposes of Section 1983 and the Section 1983 claim against him in that capacity will be addressed.  In light of the grant of summary judgment in favor of Pennsylvania State Police and Ekis in his official capacity with respect to the Section 1983 claims, plaintiffs' cross-motion for summary judgment with respect to those claims must be denied with prejudice.

      **2.**       **Ekis' Involvement in the Alleged Deprivation of Constitutional Rights Against Plaintiff-husband**

To recover under Section 1983, a plaintiff must prove two elements: (1) that the defendant subjected, or caused to be subjected, the plaintiff to a deprivation of a right secured by the Constitution or laws of the United States, and (2) that the defendant acted under color of law while causing the deprivation.  <u>See</u> 42 U.S.C. § 1983; <u>Joyner v. School Dist. of Phila.</u>, 313 F. Supp. 2d 495, 500 (E.D. Pa. 2004).  Plaintiffs argue that "[t]he actions of Defendant Trooper Ekis, under color of law, divested Plaintiff of his civil right not to be deprived of life, liberty or property without due process of law." 42 U.S.C. § 1983; (Docket No. 25, Compl. ¶ 36.)  They assert that Ekis, in his individual capacity, had a duty to follow DOT and Department of Health and Human Services federal regulation guidelines regarding drug screening, and that Ekis violated plaintiff-husband's civil rights by failing to follow the guidelines and by delivering plaintiff-husband's blood and urine samples to the non-NIDA certified Pc Lab.  Ekis argues that there is no evidence supporting plaintiffs' allegations of civil rights violations by him, and that plaintiffs failed to establish that Ekis was personally involved in the delivering of plaintiff-husband's drug screening samples to Pc Lab.

Under Section 1983, a person subjects another to a deprivation of a right secured by the constitution if the person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." McCleester v. Mackel, No. 06-120J, 2008 WL 821531, at *12 (W.D. Pa. Mar. 27, 2008) (citing Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)).

The federal regulations that plaintiffs argue Ekis failed to comply with are codified at 49 C.F.R. §§ 40.1 et. seq. The regulations set forth the DOT's requirements governing drug and alcohol tests for those people who conduct the tests. Id. § 40.1(a). The regulations specifically cover "the activities of employers, safety-sensitive transportation employees (including self-employed individuals, contractors and volunteers as covered by DOT agency regulations), and service agents."[4] Id. § 40.1(b). The regulations do not apply to the activities of individuals who escort employees to collection facilities or deliver specimens.

The record establishes that Ekis did not deprive plaintiff-husband of any constitutional or legal rights. Ekis' involvement in the drug screening of plaintiff-husband's specimens included transporting plaintiff-husband to GCMH to obtain blood and urine samples and taking those

---

[4]"Service agents" are defined as:

> Any person or entity, other than an employee of the employer, who provides services specified under this part to employers and/or employees in connection with DOT drug and alcohol testing requirements. This includes, but is not limited to, collectors, [breath alcohol technicians] and [screening test technicians], laboratories, MROs, substance abuse professionals, and [consortium/third party administrators]. To act as service agents, persons and organizations must meet the qualifications set forth in applicable sections of this part.

49 C.F.R. § 40.3. Individuals or entities who transport employees or deliver specimens are not service agents, because those services are not set forth in the regulations. The regulations provide that the collector "must ensure that each specimen [the collector] collect[s] is shipped to a laboratory as quickly as possible, but in any case within 24 hours or during the next business day." Id. § 40.73. The regulations do not govern the actions of the deliverer of specimens to service agents.

samples back to the barracks and placing them into evidence.  On February 19, 2003, State Trooper Dittrich, and not Ekis, delivered the two vials of urine and the two grey top tubes of blood to Pc Lab.  Along with the specimens, Trooper Dittrich delivered the Control Form and a letter from Pennsylvania State Police requesting testing of the specimens for drugs and alcohol. The federal regulations that plaintiffs allege Ekis violated do not apply to the actions of Ekis in this case and therefore cannot be the basis for establishing that Ekis divested plaintiff-husband of his Fourteenth Amendment rights.

In plaintiffs' brief, it is argued that, although Ekis may not have deprived plaintiff-husband of his constitutional or legal rights, Ekis' actions caused the drug testing that resulted in the deprivation of plaintiff-husband's rights.   Plaintiffs argue that Ekis initiated the drug testing procedures by transporting plaintiff-husband to GCMH and caused the wrongful drug testing procedures by submitting the specimens into evidence.  Plaintiffs argue that Ekis' placement of the samples into the police system resulted in the samples being erroneously routed and ultimately delivered and tested by a non-NIDA certified laboratory.

In McCleester, the court noted that Section 1983 liability is not solely predicated upon personal participation.  McCleester, 2008 WL 821531, at *12 (citing Johnson, 588 F.2d at 743-44).  The court explained that a person can be liable for proximately causing another to be subjected to a deprivation by "setting in motion" a series of acts by third parties that the person knows or should know would cause the third parties to inflict constitutional injury.  Id.  The person does not have to be personally involved in the unconstitutional act itself.  Id. at *13. Although not yet adopted by the Court of Appeals for the Third Circuit, the "setting in motion" standard of causation for Section 1983 claims is recognized by a number of courts of appeals and district courts, including district courts within the Third Circuit.  See, e.g., Morris v. Dearborne,

181 F.3d 657, 672-73 (5th Cir. 1999); <u>Sales v. Grant</u>, 158 F.3d 768, 776 (4th Cir. 1998);

<u>Waddell v. Forney</u>, 108 F.3d 889, 894 (8th Cir. 1997), <u>Gutierrez-Rodriguez v. Cartagena</u>, 882

F.2d 553, 560-61 (1st Cir. 1989); <u>Rudolph v. Clifton Heights Police Dep't</u>, No. 07-cv-01570,

2008 WL 2669290, at *4 (E.D. Pa. July 7, 2008); <u>Williams v. Pa. State Police</u>, 144 F. Supp. 2d

382, 383-84 (E.D. Pa. 2001). The district court in <u>McCleester</u> analyzed the issue in great detail.

<u>McCleester</u>, 2008 WL 821531, at *12-15. This court finds the reasoning of the court in

<u>McCleester</u> persuasive and will apply the "setting in motion" view of causation to this case.

Section 1983's "setting in motion" standard of causation is different from traditional
"but-for" causation or causation-in-fact. The actions of numerous individuals may be the cause
in fact of the deprivation of someone's rights, but Section 1983 does not impose liability on all
those individuals. <u>See id.</u> at *13-14. The defendant must specifically contemplate, or
reasonably be expected to have contemplated, that the plaintiff will be deprived of his or her
constitutional rights. <u>Id.</u> at *13.

Applying the applicable causation standard to this case, there is no genuine issue of
material fact about whether Ekis proximately caused the deprivation of plaintiff-husband's due
process rights. There is no evidence that Ekis knew or reasonably should have known that others
would unconstitutionally deprive plaintiff-husband of his rights. Ekis did know that plaintiff-
husband was being tested for drugs and alcohol because he was a CDL holder who had been
involved in an accident resulting in a fatality. He was told about the testing when he arrived at
the accident scene. Ekis also might have been aware that the testing had to be conducted
pursuant to federal regulations. Ekis, however, did not know what he was supposed to do with
the samples once they were collected. Ekis contacted his barracks and was instructed to bring
the samples back to the barracks and place them into evidence. There is no evidence that he had

18

any knowledge about what subsequently happened to the samples and there is no evidence he contemplated the possibility that, because of his actions, the specimens would be tested in violation of federal regulations. Moreover, there is no evidence that Ekis should have known others would inflict a constitutional injury upon plaintiff-husband.

Based upon the record, even applying the "setting in motion" standard, no reasonable finder of fact could conclude that Ekis violated plaintiff-husband's constitutional rights, or that Ekis was the proximate cause of the deprivation of plaintiff-husband's rights inflicted by others. Summary judgment must be granted in favor of Ekis with respect to plaintiffs' section 1983 claim in count II of their complaint against him in his individual capacity. In light of the grant of summary judgment in favor of Ekis in his individual capacity with respect to the Section 1983 claim, plaintiffs' cross-motion for summary judgment with respect to that claim must be denied with prejudice.

### C.      State Law Claims

Although this court has the power to hear pendent state claims following dismissal of federal claims, the court also has the discretion to refuse to hear the state claims. Pendent jurisdiction is a doctrine of "discretion, not of plaintiff's right." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). The supplemental jurisdiction statute specifically provides that:

> (c) The district courts may decline to exercise supplemental jurisdiction over a
> claim under subsection (a) if:
> . . . .
> (3) the district court has dismissed all claims over which it has original
> jurisdiction.

28 U.S.C. § 1367. Because the court dismissed all the federal claims over which it has jurisdiction in this case, the court declines to exercise supplemental jurisdiction over plaintiffs'

19

state claims based upon negligence, negligent infliction of emotional distress, and loss of consortium. This court expresses no opinion whether there is a genuine issue of material fact with respect to the counts contained in the complaint that arise under Pennsylvania law.

**V.      Conclusion**

After reviewing the joint statements of material facts, the defendants' motions for summary judgment and plaintiffs' responses, plaintiffs' motion for summary judgment and defendants' responses, and the parties' respective memoranda of law, the court finds that plaintiffs did not produce sufficient evidence for a reasonable fact-finder to conclude that Pennsylvania State Police and Ekis, in his official capacity, are persons for purposes of Section 1983. Plaintiffs did not show that Ekis, in his individual capacity, was personally involved in the resulting deprivation of plaintiff-husband's constitutional rights, or that Ekis was a proximate cause of the commission of the deprivation by others. Accordingly, defendants' motions for summary judgment will be granted with respect to plaintiffs' Section 1983 claims. By reason of summary judgment being granted in favor of defendants with respect to plaintiffs' Section 1983 claims, the court declines to exercise supplemental jurisdiction over the remaining state law claims.

**Order**

**AND NOW**, this 19th day of September 2008, upon consideration of the parties' arguments and supporting documents, **IT IS ORDERED** that Pennsylvania State Police and Ekis' motion for summary judgment (Docket No. 47) is GRANTED with respect to count II of plaintiffs' complaint. Defendants' motions for summary judgment (Docket Nos. 44, 47, and 52 respectively) are DENIED without prejudice as to counts I, III, IV, and V of plaintiffs'

complaint insofar as they are based upon claims arising under Pennsylvania law.  Plaintiffs'

cross-motion for summary judgment (Docket No. 69) is DENIED with prejudice with respect to

count II of their complaint.  Plaintiffs' cross-motion for summary judgment is DENIED without

prejudice as to counts I, III, IV, and V of plaintiffs' complaint insofar as they are based upon

claims arising under Pennsylvania law.  All plaintiffs' claims arising under Pennsylvania law are

**REMANDED** to the Court of Common Pleas of Washington County, Pennsylvania,

**FORTHWITH**.

     The clerk shall mark this case closed.


                                                                     By the court:
                                                                     /s/ Joy Flowers Conti
                                                                     Joy Flowers Conti
                                                                     United States District Judge

cc:     Counsel of record